29508. LAMB *et al.* v. LANDERS *et al.*

DECIDED JULY 10, 1942.

*Neely, Marshall & Greene, Edgar A. Neely Jr.,* for plaintiffs in error.

*Fraser & Irwin,* contra.

STEPHENS, P. J.   Morris Landers instituted suit against Lamb & Shealey and Louis Brundage, to recover damages to the plaintiff's automobile in the sum of $143.17, resulting from a collision between the automobile of the plaintiff and that of Lamb & Shealey, at a street intersection in the City of Atlanta, alleged to have been caused by the negligent operation of the automobile of Lamb & Shealey by Louis Brundage, the operator of their automobile as their agent or servant in the operation of the automobile.   The plaintiff subsequently, by amendment, alleged a further damage in the sum of $80, representing the loss for a period of four weeks of the use of the automobile, as the result of the alleged damage to it.

Lamb & Shealey filed a plea in which they denied the negligence charged to them, and specifically denied that Brundage, the alleged

driver of their automobile, at the time of the collision was acting in their behalf or on their business or within the scope of his employment, and alleged that he was at the time proceeding on a mission purely personal to himself. Brundage filed no defense. A verdict was returned for the plaintiff against all the defendants in the sum of $218.17. Only Lamb & Shealey moved for a new trial, and to the overruling of their motion they excepted.

Brundage, the driver of the automobile of Lamb & Shealey, testified that at the time of the collision he was in the employ of Lamb & Shealey; that he lived at Norcross, and a few days previously had taken the automobile, which was involved in the collision and which he was on that day driving, from Lamb & Shealey for the purpose of trying it out with a view to buying it; that he did this with the consent of Lamb & Shealey; that he obtained the automobile from Lamb & Shealey on Thursday night and tried it out on Thursday night, Friday, Saturday, and Sunday, the last being the day on which the collision occurred; that he had the wreck on Sunday night while trying out the automobile; that he had sold at Norcross several automobiles for Lamb & Shealey. Brundage, who was a colored man, was operating the automobile at the time of the collision, and in it with him were his brother and two colored girls. He was traveling on a route which led to Lamb & Shealey's place, but at the particular time he was bound for the Church of Christ on Simpson Street for the purpose of picking up his sister. He testified that he was not going to Lamb & Shealey's; that they were closed up, it being Sunday night. He stated that he could leave an automobile there on the lot any time he wanted to; that he had left one there and called up Lamb & Shealey and informed them of this fact. He made the following further statements which are taken from the brief of evidence: "When I came back [that is, after he had first taken the automobile out] he [Shealey] had already gone out of town, so I just kept on taking it from night to night. I was going home and was going to buy the car when he got back. My purpose in taking the car was that I personally wanted to buy this particular car, and this trip was purely personal to get my sister, and I was the only one interested in that car and I was personally interested." He elsewhere testified as follows: "My practice is to get this car and take the negroes for a Sunday drive around, the colored folks, and

sell the car to them. That is my blanket authority from Lamb & Shealey. I sold about fifteen or twenty, or maybe more than that, for Lamb & Shealey. I did not sell them on Sunday. I had to pay for the gas. I worked for Lamb & Shealey on a salary and a commission on the cars I sold."

Mr. Shealey testified that his business was selling used cars; that his partner is H. E. Lamb; that on Thursday preceding this occurrence Brundage told him he would like to buy that automobile and asked the witness if it would be all right for him to drive the automobile home and try it out; that the witness told him it would be all right; that Brundage took the automobile; that witness then left town and when he returned on Monday this accident had occurred; that Brundage wanted to buy the automobile and it was for this purpose only that the witness let him have it. Mr. Lamb testified that he did not personally give Brundage any authority at all in regard to driving the automobile.

Besides mere conjecture, as against the positive testimony of Mr. Lamb and of Mr. Shealey and other testimony of Brundage, Brundage borrowed the automobile for the purpose of trying it out, and therefore in using it he was not the servant or agent of Lamb & Shealey. The only possible evidence from which it could be inferred that Brundage was operating the automobile as the servant or agent of Lamb & Shealey is his statement that his practice was "to get this car and take the negroes for a Sunday drive around, . . and sell the car to them." It does not appear from this statement, assuming that he could have any practice as respects taking the car and using it on one day, that on this particular day and on this particular trip he was undertaking to sell this automobile to any one. He stated that at the time he was taking certain people for a ride he was going home, and at the time intended to buy the car himself "when he got back." Nowhere did he state that he was, at the time, demonstrating the car for the purpose of selling it to any one riding therein.

The evidence was insufficient to support a finding that at the time of the accident Brundage was acting as servant or agent for Lamb & Shealey or about their business. The verdict for the plaintiff was unsupported by the evidence, and for this reason a new trial should be granted.

Lamb & Shealey except to the admission of testimony of a wit-

ness to the effect that immediately after the collision Brundage stated that he "sells cars for Lamb & Shealey." This evidence was objected to on the ground that it was a declaration by an alleged agent as tending to prove the fact of agency when there was no evidence whatsoever to prove agency. Since it appeared unequivocally from direct testimony which was uncontradicted that Brundage was engaged in the business of selling automobiles for Lamb & Shealey, the admission of this statement, even if technically error, which we do not concede, was harmless.

Lamb & Shealey except to the charge to the jury on the ground that it in effect instructed the jury that a verdict could be returned against Brundage, as Brundage had filed no answer, without any reduction in the amount found in proportion to any negligence, if any, which might be attributed to the plaintiff, and that the court instructed the jury that if they found against Lamb & Shealey the jury should find a verdict against both defendants. Movants contend that this was equivalent to instructing that a verdict against both defendants should be in the same amount, and that as the jury had been instructed to find against Brundage the full amount of damage, without reduction in proportion to the negligence of the plaintiff, this was an instruction to the jury to find against Lamb & Shealey in the same amount as they found against Brundage, and therefore an instruction to the jury to disregard, as respects Lamb & Shealey, any contributory negligence of the plaintiff. Succinctly stated the language of the charge complained of is as follows: "The allegations of the plaintiff's petition against Brundage may be taken as true, and your verdict against Brundage, such verdict as you see fit to find, would be for such damages as this plaintiff has suffered, if any, by reason of the alleged negligence of Brundage. . . If you find for the plaintiff the form of your verdict would be 'We the jury find for the plaintiff and against the defendant Brundage' in any event, for such amount as the jury would find. If you should find under the charge given that Lamb & Shealey are responsible with the defendant, Brundage, and then if you should find for the plaintiff, under the charge given you, your verdict would be against them also, and, of course, you would write in their name also, Louis Brundage and Lamb & Shealey, so naming the defendants."

This charge instructed the jury that if they brought in a verdict

against Lamb & Shealey they should bring in one verdict against Lamb & Shealey and also Brundage, and that this verdict would be in the same amount against both defendants. There might possibly be some merit in the contention of Lamb & Shealey if the court had instructed the jury that in bringing in a verdict against Brundage they should disregard and eliminate from consideration contributory negligence, if any, of the plaintiff. The charge, properly construed, did not instruct the jury that in bringing in a verdict against Brundage they should disregard any contributory negligence of the plaintiff. Before the rendition of the excerpts above quoted the court had charged the jury as follows: "If the drivers of both cars were guilty of negligence but the negligence of the driver of the defendants', Lamb & Shealey's, car was greater than the negligence of the plaintiff's driver, then the plaintiff can recover, but his recovery would be reduced in proportion to the negligence of his driver." This was an instruction that if the plaintiff was entitled to recover, meaning if he was entitled to recover against either or both defendants, including Brundage, the plaintiff's recovery would be reduced in proportion to the negligence of his driver. The statement of the court elsewhere that since Brundage had failed to answer the petition it was mandatory on the jury to bring in a verdict against him, and that such verdict as the jury should see fit to find would be "for such damages as this plaintiff has suffered, if any, by reason of the alleged negligence of Brundage," was not an instruction that the damages assessed against Brundage must be assessed without reference to contributory negligence, if any, of the plaintiff, where the court had already instructed the jury, as has been stated, that the plaintiff's recovery as the result of the negligence of the driver of Lamb & Shealey, meaning Brundage, would be reduced in proportion to the negligence of the plaintiff's driver.

Lamb & Shealey complain of the charge of the court wherein it instructed the jury that in arriving at the amount of the plaintiff's damage the jury might take into consideration the cost of repairing the automobile, and any loss of time that the plaintiff might have suffered by reason of the automobile being out of service during the time it was being repaired; that the plaintiff would have a right to recover the reasonable value of the use of the automobile for a reasonable length of time during

which the automobile was being repaired. The objection to this charge is that the court erroneously instructed the jury that they could find for the plaintiff, in addition to damages represented by the difference between the value of the automobile before the injury and the value afterwards, the value of the lost use of the car during the time the car was being repaired. Movants allege that both of these elements of damage were not recoverable. There is no merit in this objection. Under the law, both elements were recoverable provided, in the aggregate, the sum did not exceed the value of the automobile before the injury with interest thereon. See *Telfair* v. *Webb,* 119 *Ga.* 916 (2) (47 S. E. 218); *Southern Ry. Co.* v. *Stearns,* 8 *Ga. App.* 111 (68 S. E. 623); *Olliff* v. *Howard,* 33 *Ga. App.* 778 (127 S. E. 821).

The evidence did not authorize the verdict for the plaintiff. Otherwise no error appears.

*Judgment reversed. Sutton and Felton, JJ., concur.*